In the Matter of the Judicial Settlement of the Accounts of JAMES T. MITCHELL, JOHN P. ROOSA and SETH B. STODDARD, as Executors of the Last Will and Testament of HANNAH HAMMOND, Deceased, Appellant.

JOHN P. ROOSA, Appellant; THE TRUSTEES OF THE NEW YORK ANNUAL CONFERENCE, Objecting Legatee, Respondent.

*Executor — liability of, to account for securities received from his testatrix — when contestants need not, and when they must, affirmatively establish an indebtedness on his part therefor — revocation, by the death of the testatrix, of an agency to sell.*

Upon the accounting of an executor, it appeared that, several years prior to the death of his testatrix, he received certain securities as her agent; that subsequently he delivered them to her, and that thereafter they again came into his possession, where they remained until the death of the testatrix, and that he personally paid several assessments against the same.

The court refused to permit the executor to testify under what arrangement·or circumstances he regained possession of the securities.

*Held,* that his liability as agent ceased when he delivered the stock to his testatrix, and that the burden was upon the contestants to show that his subsequent possession thereof was acquired under such circumstances as created an indebtedness to her for the same.

It also appeared that, at the time of the death of the testatrix, the executor had in his possession certain other securities belonging· to the testatrix which she had deposited with him, with instructions to sell the same when he should sell some securities of his own; that after the death of the testatrix, and before letters· testamentary had been issued to him, the executor sold the securities and applied. the proceeds to his own use.

*Held,* that the executor's agency to sell the stock was revoked by the death of the testatrix, and that the sale of the stock amounted to a conversion thereof, the measure of damages for which should not exceed the highest market value of the stock subsequent to the sale;

That the fact that he had received shares of stock for which he was liable as agent, five years before the death of the testatrix, and that her death prevented him from testifying concerning the disposition of such shares, did not relieve him from the burden, which would have rested upon him had the account been demanded by the testatrix in her lifetime, of showing that he had already accounted for the same.

APPEAL by John P. Roosa, from a decree of the Surrogate's Court of the county of Sullivan, entered in said Surrogate's Court on the 11th day of April, 1898, upon the judicial settlement of the accounts of the said John·P. Roosa and others, as executors of the last will and testament of Hannah Hammond, deceased, and especially from that portion of said decree as surcharges the account of said John P. Roosa with a certain alleged indebtedness existing against him in favor of the estate.

*T. F. Bush,* for John P. Roosa, appellant.

*Charles F. Cossum,* for objecting legatee, respondent.

PARKER, P. J.:

Mrs. Hammond died in Monticello, in August, 1895. The appellant Roosa was one of the executors of her will. In proceedings for a judicial settlement of his accounts, before the surrogate of Sullivan county, certain legatees sought to· surcharge the accounts as presented by certain amounts which they claimed Roosa should account for because of having held in his custody for collection certain securities belonging to the deceased which he had appropriated to his own use.

The deceased was an old lady, the aunt of the appellant Roosa, and had resided in his family for several years prior to her death. She had no children living when she died, and she died at his house. Roosa was a large dealer in stocks, and, as he testified, sold some of her stocks at her request, and purchased others with the proceeds thereof. She had quite a number of securities, certificates of stock, etc., which she kept together in a bundle tied up in brown paper; and Roosa deposited them for her in the vault in the bank in that village, sealed with his seal. He, however, testified that he never opened it except in her presence. That when any thing was taken from it, he took the bundle from the bank to her, and whatever was taken out was in her presence.

Some time prior to December 3, 1889, she put into his custody to sell for her the following securities: Fifteen United States bonds of the par value of $19,000 ; five Delaware and Hudson Canal Company bonds of the par value of $5,000 ; four Chicago, Milwaukee and St. Paul Railroad Company bonds, par value $4,000. All of these were sold by Roosa through his brokers in New York city, and each transaction was credited in his name.

The contestants sought to charge Roosa with all these securities, but the surrogate held him upon the following only : Nine of the government bonds were sold in December, 1889, and from the proceeds 100 shares of New York Central stock were purchased, and a check for the balance, $401.25, was received by Roosa. The surrogate held that Roosa was liable on this accounting for the amount of that check.

In May, 1890, such 100 shares were sold, and with the proceeds 100 shares of Union Pacific stock, and 100 shares of Ontario and Western stock were purchased, and a check for $2,087.50 for the balance was received by Roosa.

For the value of such shares, and the amount of that check, the surrogate has held that Roosa was liable on this accounting.

In January, 1891, there were sold the five Delaware and Hudson Canal Company bonds, and from the proceeds 100 shares of Union Pacific stock were purchased, and Roosa received for the balance a check for $800. The surrogate held that Roosa was liable upon this accounting for the value of such 100 shares of stock, but did not hold him for the $800 check.

As to the rest of the securities so placed in his hands for sale, as above stated, the surrogate held that Roosa was not liable for the same; and no appeal having been taken from that decision, no question concerning them is now before us.

It is to be noticed that the receipt of these securities was several years prior to the death of Mrs. Hammond, and the surrogate has charged the appellant with the several amounts on the theory that, having received securities to sell for her as her agent, the obligation was upon him to show that he had accounted for and transferred to her all the proceeds thereof; that Roosa, having failed to show such a payment or transfer, so far as the items above stated are concerned, must be deemed to have converted them, and must, therefore, be charged with the highest market value thereof since the conversion.

Under section 2731 of the Code of Civil Procedure it is probable that, if it was shown that Roosa was a debtor to the estate of the deceased, his accounts as executor could be surcharged with the amount of such indebtedness.

It is also clear that Roosa received the securities, from the proceeds of which it is claimed he received the checks and purchased the ones in question, as the agent of the deceased, and that he was liable to account to her therefor.

The serious question is, whether it does not appear that he had fully accounted to her for the same during her lifetime.

With reference to the 100 shares of Union Pacific procured in May, 1890, Roosa testified that he delivered them to Mrs. Hammond, and that for a time thereafter they were kept with her other securities. They were assigned in blank so that his indorsement thereon was not necessary to give her the full control of them. Subsequently they came again into his possession, and he seems to have held them at the time of her death, and he testified that he then owned them. Under what arrangement they so came into his possession does not appear, except that, in answer to an inquiry put by the counsel for the respondents, he testified that he did not pay her anything for them. His evidence shows that he received them from her some time before her death, and that he had personally paid several assessments against the same; but under what arrangement or cir-

cumstances he did receive them, he was prohibited from testifying under the objection of the respondent, that such testimony was not admissible under section 829 of the Code of Civil Procedure.

Without deciding whether such exclusion was or was not correct, I am of the opinion that it sufficiently appears that his liability as an agent for such stock ceased when he delivered it to her, and that the burden was upon the contestants to show that his subsequent possession thereof was under such circumstances as created an indebtedness to her for the same. It does not follow that because he received it from her, without paying for it, he received it as her agent. It may have been a gift, as he claims, but to which he was not allowed to testify. I do not think that the mere possession of this certificate at the time of her death imposed upon him the burden of showing that he did not receive it as her agent, or that he was not indebted to her for it. There was no general and continuing agency to sell shown sufficient to raise the presumption that he so held this certificate, and I, therefore, conclude that it was error to surcharge his account with this item.

As to the other 100 shares of Union Pacific, Roosa received them in January, 1891, but it is clear that he soon after delivered them over to the deceased. The surrogate so finds. That closed that transaction. But subsequently she put them into his custody to sell whenever he should sell his own Union Pacific stock, and they were so in his custody at the time of her death. About three months after her death, viz., November 26, 1895, having concluded to sell his own, as the stock was constantly depreciating in value, he sold those 100 shares and received $837.50 therefor. At that time his agency had ceased, owing to Mrs. Hammond's death. He had authority, as executor, to care for such stock, but not to sell it, as letters testamentary had not then been issued to him. (Code Civ. Proc. § 2613.) The amount received on such sale was placed to his own credit and used by himself; and when he came to make up the inventory of the estate of the deceased, the stock and amount so received were omitted therefrom. Such stock was plainly assets of the estate, and although, probably, no conversion of the same was intended, yet such conduct did constitute a conversion, for which Roosa became liable. The conversion, however, did not occur until the sale was made, and the highest market value of this stock subsequent to that date, so far as

the evidence discloses, was eleven dollars and fifty cents a share. The charge against Roosa on account of these shares should, therefore, be estimated at that figure instead of fifteen dollars and seventy-five cents per share, as fixed by the surrogate.

As to the 100 shares of Ontario and Western stock, they were not found among the deceased's securities at the time of her death, and there is no evidence what Roosa did do with them. He claimed that he turned them over to her with the Union Pacific stock, but he was not allowed to so testify.

The question is, therefore, presented whether, having concededly received five years before her death, as her agent, the shares in question, as her property, he is liable to account to her estate therefor, unless he shows affirmatively that he has already accounted to her for the same. It is clear that he was liable to account for and pay over to Mrs. Hammond such property and all its proceeds, and that the right to demand such an accounting would, upon her decease, pass to her executors. If she herself had, five years after the receipt of this stock by Roosa, demanded that he account for and pay over the same to her, and had proved that it came into his possession in the same way that he is shown to have acquired it in this case, the burden would have rested upon him to prove that he had already transferred the same to her. Upon what theory can it be claimed that such burden is not still upon him, although the demand is made by those lawfully representing her, instead of by herself? The lapse of time raises no presumption in his favor; and her death, although it makes the burden of proof much more onerous for the reason that he cannot himself testify, cannot change the rule. So far as appears, Roosa has alone had the use of that stock, and the surrogate was correct in holding him for it.

As to the two checks, one for $401.25 and the other for $2,087.50, concededly they represent money received by him on the sale of Mrs. Hammond's property. They were payable to his order, and have been paid by the drawer. There is no evidence that Mrs. Hammond has ever received the checks, or the money due on them; Roosa has failed to make that proof, and for the reasons given above, with reference to the Ontario and Western stock, the surrogate was correct in charging him with their amounts.

My conclusion is, that the decree of the surrogate should be

modified by striking out therefrom the charge against Roosa of $1,575 for 100 shares of Union Pacific stock received by him May 20, 1890, and allowing as damages for the other 100 shares of such stock the sum of $1,150 only; and that the indebtedness therein adjudged against him should be diminished by that amount, and as so modified affirmed, without costs.

All concurred.

Decree of Surrogate's Court modified by striking therefrom the charge against Roosa of $1,575 for 100 shares of Union Pacific stock received by him May 20, 1890, and by allowing as damages for the other 100 shares of such stock the sum of $1,150 only; and as so modified affirmed, without costs.